(22 App. Div. 366.)

In re STATEN ISLAND MIDLAND R. CO.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. RAILROADS—ROUTE—TRIAL BEFORE COMMISSIONERS.
   In a proceeding before commissioners appointed to determine the propriety of a proposed railroad route, there is no error in the refusal of the commissioners to admit as evidence certain agreements, when the agreements contained only details of a general proposition already before them.

2. SAME—PROPRIETY OF LOCATION.
   Where the report of commissioners appointed for the purpose of deciding upon the route of a proposed railroad shows the proposed route to be the most convenient and accessible to the public that could be laid out, the fact that this proposed route will give the company an advantage over competing roads will be no ground for setting aside the report.

Motion to confirm the report of commissioners appointed by the supreme court, on application of the Staten Island Midland Railroad Company, to determine whether the road ought to be constructed on South street, in the village of New Brighton, Richmond county, and on a roadway from South street to the ferry at St. George. Objection to the confirmation of the commissioners' report was made by the Staten Island Rapid Transit Railroad Company, by the Rapid Transit Ferry Company, and by the Staten Island Electric Railroad Company. These several companies will be briefly designated as the "Midland Road," "Steam Road," "Ferry Company," and the "Electric Road," respectively. Motion granted.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John S. Davenport, for petitioner.
Joseph M. Keatinge, for Staten Island Electric Co.
Lester W. Clark, for Staten Island Rapid Transit R. Co. and another.

GOODRICH, P. J. The commissioners have reported that the Midland Road ought to be constructed and operated on South street and on the roadway; that the Steam Road and the Ferry Company decline to consent to the construction, both on South street and on the roadway; that the village of New Brighton has assented to the construction on South street; and that the public convenience will be promoted by the construction and operation of the Midland Road on South street and on the roadway. In 1886 the Steam Road had completed its road on the north and east shores of Staten Island. It had previously acquired a ferry franchise from St. George to the city of New York, and constructed a large and commodious ferry house and landings at that place, to which its tracks extended, thus forming a close connection between the Steam Road and ferry. In 1894, the Electric Road had built its tracks, and made an agreement with the Steam Road and the Ferry Company by which they became equal owners of the capital of the Ferry Company. Arrangements were made between them by which the Electric Road was permitted to cross, by an elevated structure, some of the Steam Road's property, and to construct an elevated platform as a station for its passengers. This platform is some 22 feet above the level of the roadway, and is reached by a stairway from the ferry house. The ferry landing is on a plain which extends backward several hundred feet, where the ground rises rapidly, and the Electric Road tracks traverse a part of the high ground, thus communicating with the interior of the island; and possibly this was one of the reasons for the elevated platform arrangement between the companies. The route of the Midland Road, as defined in its certificate, runs from the interior of the island, with its terminal at the ferry. About 20 miles of track have been constructed, extending to within about 2,000 feet of the ferry. It is sufficient for the purposes of this decision to say that the route designated in the certificate is through "Hyatt street to Stuyvesant place, therein; upon and along Stuyvesant place to South street, therein; upon and along South street to its terminus near the waters of New York Bay; thence upon and along the street, highway, road, public or private way leading from South street to the ferry at St. George landing." South street is a public street in the village of New Brighton, and the board of trustees of that village have consented to the construction of the Midland Road thereon; but, as the objectors contend that the roadway leading from South street to the ferry landing is not a public place or highway, there was inserted in the order appointing the commissioners the following words: "Reserving to the objectors the right to litigate before the commissioners the question whether said last-named roadway is a public highway or not." It may be here observed that it appears by the record and the report of the commissioners that the objectors have not elected to nor have they litigated this question before the commissioners. This court therefore must assume, for the purposes of this motion, that the objectors have not raised the question whether or not the roadway was a public highway or street, and we express no opinion upon that subject. The Electric Road laid a single track on South street, and the Steam Road obtained a temporary injunction restraining it from constructing its road either in South street or the

roadway; and by stipulation between the parties the motion for a permanent injunction has been postponed in such a manner that it can be brought to a hearing by either party on seven days' notice.

Over 50 witnesses were examined, and nearly 600 pages of evidence were taken, before the commissioners. The witnesses consisted of engineers, dealers in and owners of real estate, drivers of wagons, officers of the railroads and the Ferry Company, residents of the vicinage, passengers by the roads and ferry, and others. Much of the testimony related to the amount of travel, and means of communication, and the conditions existing on South street, the roadway, in the vicinity, and at the ferry landing. The commissioners, after a very patient hearing, unanimously reported in favor of granting the prayer of the petitioner. The reasons assigned by them, and a careful examination of the evidence, lead us to the conclusion that their recommendations and report should be confirmed by this court. They base their report, not only on the evidence taken before them, but also on a personal examination and observation of the location, the usual travel to and from the ferry, the convenience of passengers, the amount of travel by foot and railroad passengers and by vehicle, and report that there is adequate and sufficient room for the tracks of the petitioner on South street and the roadway, for the present traffic, and for all that may reasonably be anticipated as probable, or, indeed, possible, upon the ferry. They seem to have made especial examination of a proposal by the objectors to permit the petitioner to build a bridgeway and overhead terminal similar to that of the Electric Road, and find that the public convenience will be far better served by permitting the petitioner to build its road along the surface. The reasons assigned by the commissioners in this respect meet our approval. They conclude that the bridgeway and platform constructed by the Electric Road have already proved inadequate, congested, and inconvenient for passengers between the ferry and the Electric Road; that it is not for the public convenience to use a common terminal for these two independent trolley lines of railroad; that the building of a second entrance and bridge to the ferry would cause inconvenience and obstruction, by the passing and repassing of the two trolley lines; that it is unreasonable and unnecessary to compel passengers to climb from the ferry to the platform, 22 feet high; and that the expense of the latter construction would be large and burdensome.

One of the main grounds of objection is that the Ferry Company and the Steam Road have offered to the petitioner similar facilities to those offered to, and now used by, the Electric Road, in respect of the elevated bridge and platform constructed by the Electric Road. The commissioners refused to receive in evidence the agreement of the Steam Road with the Electric Road. They did receive the offer to the Midland Road, and we see no error in their refusal to receive the agreement with the Electric Road. Proceedings before commissioners, who are not necessarily lawyers, are not conducted on the strict lines of trials before courts. The commissioners' duty was to investigate, practically, the necessities of the situation, and the safety and convenience of travelers, and the agreement with the Electric Road was not essential. The existence and character of the struc-

tures of that company, and the facilities to travel thereby, were before the commissioners, and they examined the premises. The object of the evidence was to show that "common trackage" between the Midland and the Electric was the basis of the proposal, and that subject the commissioners had under consideration, and arrived at the conclusion that the public convenience would be better subserved by tracks on the surface than by an elevated track and station. The fact that common trackage was offered was before them, and entered into their consideration, and the details of the proposition were not essential. Neither were the commissioners impressed by the evidence that there was only a distance of 300 feet between the road of the petitioner and that of the Electric Road at a point on Arrietta street. The Midland Road had the right to prefer its own route to one designated by another, and possibly a competing, railroad company. Such nearness of access is not the question herein involved, nor can it influence the result. The purpose of the Midland Road was to make the approach to the ferry landing more convenient and accessible for its passengers, not to put itself and its advantages on a plane with those of a rival company. And we cannot lose sight of the fact that the objectors upon this motion consist solely of such rival companies, although property owners appeared before the commissioners, and were permitted to examine witnesses. The commissioners are well-known residents of Staten Island, carefully selected by this court with a view to their qualifications to judge the situation; and we may assume that they are quite as familiar with the requirements and desires of the inhabitants of the Island as the persons owning or controlling the Ferry Company and other railroads; and, even if our views did not agree with theirs, we would have great hesitation in differing from their conclusions. But, as we have already said, we have discovered nothing in the evidence taken before them to cause us to differ.

The report of the commissioners must be confirmed; reserving, however, to the parties interested, the right to contest the question whether the roadway is a public street or highway, or private property. All concur.